ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **ISRAEL MARTÍNEZ GUTIERREZ y CARMEN H. HERNÁNDEZ ROSA**<br><br>Recurrido<br><br>v.<br><br>**SUNAIR PHOTOVOLTAIC LLC; CARLOS CÁCERES MAURY; y COOPERATIVA DE AHORRO Y CRÉDITO LOS HERMANOS**<br><br>Recurrente | KLRA202400681 | **REVISIÓN** procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm: **SAN-2021-0009501**<br><br>Sobre: Ley Núm. 5 del 23 de abril de 1973 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2025.

Sunair Photovoltaic, LLC. y el señor Carlos Cáceres Maury (en conjunto, parte recurrente) solicitan la revisión de la *Resolución Final* emitida y notificada el 8 de octubre de 2024, por el Departamento de Asuntos del Consumidor (DACo). Mediante dicha determinación, el DACo decretó la resolución del contrato de compraventa celebrado entre las partes.

Por las razones que expondremos a continuación, se desestima el recurso de revisión judicial por falta de jurisdicción.

**I.**

Según surge del expediente, el 23 de junio de 2017, las partes de epígrafe suscribieron un acuerdo de compraventa para la instalación de un sistema de generación distribuida fotovoltaico, sistema 11KW con 34 módulos solares, inversor, sistema de anclaje, así como un generador eléctrico con una interface "web" conector ("transfer switch"). De acuerdo con el documento, los planos

certificados, certificaciones eléctricas, permisos, instalación e interconexión con la AEE (medición neta) estaban incluidos en el precio pactado de $40,459.39.[1]

El 16 de agosto de 2021, el señor Israel Martínez Gutiérrez y la señora Carmen M. Hernández Rosa (matrimonio Martínez Hernández o parte recurrida) instaron una *Querella* contra Sunair Photovoltaic, el señor Carlos Cáceres Maury (señor Cáceres Maury) y la Cooperativa de Ahorro y Crédito Los Hermanos (Cooperativa). El remedio solicitado en la querella era que la aludida entidad culminara los trabajos por los cuales se le pagó. En la alternativa, solicitaron la devolución del dinero en su totalidad, más los intereses pagados a la Cooperativa. Sunair Photovoltaic y el señor Cáceres Maury contestaron la querella el 31 de mayo de 2022. Negaron las alegaciones en su contra y adujeron que se realizó el trabajo acordado, por lo cual cumplieron con sus obligaciones contractuales. Añadieron que no se les había solicitado que brindaran mantenimiento al sistema instalado.[2]

A su vez, arguyeron que procedía la desestimación de la querella instada en contra del señor Cáceres Maury por dejar de exponer una reclamación que justificara la concesión de un remedio a favor del matrimonio Martínez Hernández. Esta última alegación fue reiterada mediante *Moción Solicitando Desestimación*, presentada el 20 de octubre de 2022 por Sunair Photovoltaic y el señor Cáceres Maury.[3] El matrimonio Martínez Hernández se opuso a la petición de desestimación, por entender que la compañía Sunair Photovoltaic era un *alter ego* del señor Cáceres Maury. Destacó que, desde el día de su incorporación, la entidad incumplió su obligación corporativa de radicar el informe anual, por la cual su registro

---

[1] Apéndice del recurso, págs. 42-43.
[2] Apéndice del recurso, págs. 28-38.
[3] Apéndice del recurso, págs. 84-88.

corporativo fue cancelado. Precisó que para la fecha de la contratación concernida ya la entidad no estaba cumpliendo sus obligaciones corporativas, porque nunca existió dicha entidad, sino que fue una mera ficción. Argumentó que el señor Cáceres Maury pretendía desligarse de las obligaciones que él mismo contrató, por lo que solicitó al DACo que denegara el petitorio de desestimación.[4]

Por medio de una *Orden Interlocutoria* emitida el 9 de noviembre de 2022, el DACo declaró *No Ha Lugar* la moción de desestimación incoada por el señor Cáceres Maury. La agencia determinó que no estaba obligada a reconocer la ficción jurídica de la corporación cuando ésta establece un patrón de conducta de llevar a cabo actos contrarios a la ley, en abierto menosprecio del ordenamiento.[5]

Luego de múltiples trámites procesales, el 8 de diciembre de 2022, se llevó a cabo una inspección ocular del área objeto de la querella en la propiedad del matrimonio Martínez Hernández. El 19 de diciembre de 2022 se notificó el *Informe de Inspección* suscrito el 15 de diciembre de 2022 por el técnico de investigación, Luis F. Vega Fernández.[6] Sunair Photovoltaic y el señor Cáceres Maury impugnaron las observaciones realizadas por el técnico durante la inspección llevada a cabo el 8 de noviembre de 2021. Argumentaron que en dicho escrito se añadieron las observaciones del técnico relacionadas con la inspección efectuada el 8 de diciembre de 2022, contra las cuales no formularon ningún comentario. El técnico Vega Fernández observó que los inversores estaban *"offline"*; las placas fotovoltaicas estaban cubiertas de sucio y/o sedimentación y el

---

[4] Apéndice del recurso, págs. 93-98.
[5] También denegó una moción de desestimación instada por la Cooperativa. Además, aclaró que existía una controversia que podía incidir en la jurisdicción del DACo sobre la materia del caso, la cual decidiría una vez se realizara la inspección ocular. Apéndice del recurso, págs. 104-105.
[6] Apéndice del recurso, págs. 116-118.

"*transfer switch*" mostraba cableado interno quemado. Asimismo, el técnico expresó lo siguiente:

> Al momento de la inspección se observó cuando el Sr. Carlos Cáceres dio varios leves golpes a la cubierta exterior de los inversores para que estos pudieran mostrar la data de producción de energía en sus pantallas digitales.
>
> Durante el proceso de inspección las partes dialogaron en presencia de la Juez Administrativa, acordando preliminarmente que la parte querellada va a revisar todas las conexiones entre las placas photovoltaicas y a realizar limpiezas de estas, va a revisar la producción de energía en los inversores y el funcionamiento de los mismos, va a verificar el cableado del "*transfer switch*" y va a realizar toda gestión de permisología con la AEE y/o Luma.
>
> Se refiere el caso a la División Legal para acción pertinente.

El 1 de febrero de 2023 se celebró una vista sobre el estado de los procedimientos, a la cual comparecieron todas las partes representadas por sus respectivos abogados. El 15 de mayo de 2023 se llevó a cabo una nueva inspección ocular en la propiedad del matrimonio Martínez Hernández. El 2 de junio de 2023 se notificó un *Informe de Inspección* actualizado.[7] En este, el técnico Vega Fernández hizo constar que:

> Se realizó una inspección ocular de las placas solares, las cuales al momento se observaban libres de sucio y/o sedimentación. La parte querellada informó que este realizó limpieza de las misma[s] en una visita hecha previamente. Se procedió a verificar el funcionamiento de los inversores, a los cuales el Sr. Cáceres tuvo que dar varios golpes con sus manos a la cubierta exterior para que la pantalla digital encendiera. El Sr. Cáceres, muy elocuentemente explicó a todos los presentes como es el funcionamiento del equipo y con el uso visual de una "laptop" mostró varias gráficas, las cuales fluctuaban en tamaño según el equipo alegadamente iba produciendo energía.
>
> En ningún momento se pudo comprobar que el equipo en efecto estaba generando energía ya que la misma no es accesible a las conexiones eléctricas de la residencia en el evento de un apagón. **Ni siquiera bajando el "*transfer switch*" para desconectar momentáneamente la energía eléctrica producida**

---

[7] Apéndice del recurso, págs. 132-134. Este Informe fue objetado por las coquerelladas.

**por Luma se puede acezar (sic) la energía producida por las placas en tiempo real**.

Al momento se me informó que el trámite de permisología con Luma aún no se ha podido realizar.

A raíz de lo anterior, el técnico de investigación opinó que el equipo objeto de la querella no cumplía con las expectativas esperadas en cuanto a los siguientes parámetros:

a) Reducción de la factura mensual de luz.
b) Trámite de permisología con la AEE y/o Luma Energy.
c) Acceso a energía producida por las placas en el evento de un apagón.
d) Se le adeuda una placa solar.

A tales efectos, recomendó al DACo tomar en consideración la petición reclamada en la querella.

El 7 de diciembre de 2024, se celebró una vista en su fondo. En esta testificó el técnico Vega Fernández, el señor Martínez Gutiérrez, la señora Hernández Rosa, el señor Cáceres Maury y la señora Brenda de Jesús Falero[8].

El técnico del DACo testificó que tenía 28 años de experiencia trabajando en la agencia. Realizó tres (3) inspecciones con relación a los hechos de la querella de referencia. Expresó que no había manera tangible de corroborar que el equipo de producción de energía estuviera funcionando, por ejemplo, desconectando el "*transfer switch*". Opinó que, luego de hacer la inspección del sistema, éste no funcionaba, que ni siquiera se podía prender una bombilla. Expuso que había 33 placas solares instaladas. **Reconoció que no tenía prueba científica alguna para saber si el sistema funcionaba desde su instalación.**[9]

De otro lado, el testigo Martínez Gutiérrez atestó que suscribió un acuerdo con la parte querellada, pero éste nunca fue finalizado.

---

[8] Testificó en representación de la Cooperativa como presidenta ejecutiva sobre el proceso de obtener un préstamo para la compra de placas solares. Transcripción de la Prueba Oral (TPO), págs. 164-175.
[9] TPO, págs. 11, 21-24, 29.

Especificó que faltaba una placa solar, unos pipotes de gas y la permisología. Relató que pagó por 34 placas solares y solo fueron instaladas 33. Añadió que pagó por dos (2) pipotes de gas y ninguno se instaló. **En cuanto al acuerdo de permisología, enunció que la parte querellada iba a someter toda la documentación a Luma y solo tenían que pagar un "*fee*", pero la permisología nunca fue efectuada. Añadió que incluso los contactó el ingeniero Soto y les hizo varias preguntas con el propósito de que la parte querellada se iba a hacer cargo de la permisología. Mencionó que el sistema no estaba trabajando correctamente**. Expuso que no entendía como la Cooperativa desembolsó el préstamo al contratista porque el trabajo no se finalizó. Particularizó que el contrato requería que se certificara que el trabajo estaba terminado para que la Cooperativa pudiera desembolsar la segunda parte del pago a Sunair y que él nunca lo certificó. Contó que la única vez que la parte querellada dio mantenimiento al sistema fue posterior a la primera visita. Manifestó que se le notificó a la Cooperativa que estaba teniendo problemas con la compañía y que la señora Brenda de Jesús Falero les indicó que iba a contactar al señor Cáceres Maury para que finalizara todo. Por su parte, la señora Hernández Rosa narró que el sistema instalado en su casa no servía.[10]

Posteriormente testificó el señor Cáceres Maury. Indicó que era perito electricista e instalador solar y que le vendió un sistema de energía renovable al matrimonio Martínez Hernández en el 2017. Expresó que su trabajo consistía, según acordado, en una venta e instalación de un sistema de generación. Añadió que, **como el sistema no tenía la capacidad de prender por sí solo porque no tenía sistema de batería ni de respaldo, se instaló una opción de un generador para el momento en que no hubiera energía**

---

[10] TPO, págs. 36-37, 41, 44-46, 51, 56.

**eléctrica**. Instaló dos (2) inversores combinados con un sistema de placas solares para cubrir la parte de la energía que el matrimonio estaba consumiendo en ese momento. **Acentuó que no instaló baterías porque era un sistema GD distribuido, un sistema de intercambio únicamente que no tenía respaldo de ningún tipo que no fuera utilizar un generador.** Testificó que Sunair instaló todo el sistema de placas, inversores, generador, planta eléctrica con su "*transfer*" y gas en reguladores por las líneas para poner la planta eléctrica a funcionar. Expuso que no había pipotes de gas al momento de la instalación y que no hubo por casi un año después del paso del Huracán María. Precisó que, aparte del servicio contratado, realizó un trabajo eléctrico dentro de la casa del matrimonio, a petición del señor Martínez Gutiérrez. Acentuó que todavía le adeudan una cantidad de dicho trabajo. Relató que pasado año y medio del Huracán María consiguió los pipotes de gas y se comunicó con el matrimonio, pero le dijo que le entregaría los mismos si se le pagaba la parte adeudada por los trabajos eléctricos y que después de eso no tuvo más comunicación.

**Con relación a la medición neta, el testigo contó que el sistema del matrimonio no tiene medición neta en su residencia por falta de cooperación de abrir una cuenta en Luma. Indicó que la ingeniería está hecha, y que lo único que falta es una cuenta para que el ingeniero pueda proceder.** Narró que entregó 34 placas, instaló 33 y luego tuvo que reemplazar una. **Expresó que el técnico del DACo tenía desconocimiento sobre el sistema porque si Luma fallaba el sistema se apagaba porque no tenía a donde exportar la energía, toda vez que no habían baterías. Testificó que el sistema únicamente se utilizaba para bajar el costo de la energía, no para producir energía de respaldo.** Particularizó que en el momento que se baja el "*transfer switch*" el sistema se tiene que desconectar porque si se mantuviera enviando

energía electrocutaría a la gente que trabaja en Luma o en la calle. Explicó que el sistema del matrimonio no tiene respaldo ni *"backup"* porque en el momento en que se cotizó lo que le podría costar un sistema de batería, éstos optaron por una opción más económica como una planta eléctrica. Declaró que los documentos y los planos necesarios para la solicitud de medición neta los tenía el ingeniero Juan Soto esperando que haya una cuenta para poderlo someterlos. Indicó que los servicios del ingeniero los pagó él.[11]

El señor Cáceres Maury contradijo al técnico del DACo y expresó que para poder ver que el sistema está trabajando utiliza una plataforma del manufacturero y además tiene un apantalla o *"tap device"* que hay que "darle" para que prenda. Precisó que ello se hacía para salvar la vida de la pantalla, no que está dañada. Añadió que la pantalla brinda el historial de lo que ha producido el inversor en su vida útil. Aseveró que el sistema estaba en pleno funcionamiento y trabajando correctamente y que se le dio mantenimiento. Atestó que cualquier equipo que encienda eléctricamente de 7:00 am a 5:00 pm se alimenta de la producción de los equipos. Enfatizó que cualquier diferencia que tenga de exceso de producción se iba por el contador hacia Luma y el matrimonio Martínez Hernández no podría reclamar crédito alguno porque no tiene medición neta. Aceptó que el proceso de la medición neta estaba incluido en la facturación de la instalación del sistema y que el documento no decía que sería un proceso compartido entre la compañía y el matrimonio Martínez Hernández. Manifestó que los tanques de gas que incluía la facturación no se pudieron suplir y el costo de estos no se dedujo del costo del servicio. Aclaró que si tuviera responsabilidad ante el matrimonio Martínez Hernández relevaba a la Cooperativa. Sostuvo que no entregó los tanques de gas

---

[11] TPO, págs. 60-63, 66-72, 161.

porque el matrimonio Martínez Hernández le quedó a deber una cantidad por unos trabajos hechos en su hogar posterior a la instalación del sistema.[12]

Aquilatada la prueba, el 8 de octubre de 2024, el DACo dictó la *Resolución Final* recurrida, en la cual formuló las siguientes determinaciones de hechos:

1. La parte querellante se identifica en la querella de epígrafe como Israel Martínez Gutiérrez y Carmen H. Hernández Rosa, casados entre sí y residentes de Toa Alta, Puerto Rico.

2. La parte coquerellada Sun Air Photovoltaic, LLC. es una compañía de responsabilidad limitada, que fue inscrita en el Departamento de Estado el 24 de septiembre de 2015 y cancelada el 31 de diciembre de 2019, por no rendir sus informes anuales. Su agente residente y pesada autorizada es el coquerellado Carlos A. Cáceres Maury.

3. La parte coquerellada Cooperativa de Ahorro y Crédito Los Hermanos fue la entidad que brindó el financiamiento del equipo objeto de la querella.

4. El 25 de marzo de 2017, la parte querellante suscribió con la parte coquerellada Sun Air Photovoltaic, LLC., un contrato para la instalación de generación distribuida fotovoltaico, sistema 1KW, con treinta y cuatro (34) módulos solares, sistema de anclaje, interface "web" conector, que incluía la conexión para la planta eléctrica ("transfer switch").

5. El contrato entre las partes incluía, además, los planos certificados, las certificaciones eléctricas, los permisos, instalación e interconexión con la AEE (medición neta). La garantía era de diez (10) años en la instalación y diez (10) años de mantenimiento incluidos.

6. El sistema no fue vendido con respaldo de baterías, pero sí con un generador de energía.

7. El costo total del contrato fue financiado a través de la parte coquerellada Cooperativa de Ahorro y Crédito Los Hermanos.

8. Realizada la instalación de las placas, la parte querellante reclamó a la coquerellada que el equipo no estaba funcionando. La querellada adeudaba a los querellantes dos tanques de gas.

9. La parte querellada no respondió satisfactoriamente a los reclamos de la parte querellante, por lo que el 16 de agosto de 2021, radicaron la querella de autos.

10. Luego de varios incidentes procesales, durante una de las inspecciones, las partes llegaron a un acuerdo, a los fines de que la querellada evaluara la producción del equipo y gestionara los permisos para

---

[12] TPO, págs. 78-80, 109, 115-116, 124-126, 140, 152-155.

la interconexión a la AEE y la medición neta, con el Ingeniero José M. Soto.

11. El Ingeniero José M. Soto requirió a la parte querellante información personal que dicha parte proveyó y le indicó que su propósito era someter los permisos correspondientes.

12. El Sr. Luis F. Vega Fernández, Investigador de Querellas del Departamento durante veintiocho (28) años, declaró durante la vista que "no pudo determinar de manera tangible" si el equipo estaba funcionando o no y si estaba produciendo energía. El técnico declaró que sólo había treinta y tres (33) placas instaladas.

13. La prueba desfilada y creída durante la vista no fue concluyente a los fines de establecer, que una vez se realice la interconexión a la AEE, el equipo funcionará satisfactoriamente, por lo que no podemos determinar si se cumplió o no con el acuerdo.

Tras tomar en consideración las referidas determinaciones de hechos, el DACo concluyó lo siguiente:

[…]

En el presente caso, la prueba desfilada no nos convenció de que se cumplió cabalmente con el acuerdo asumido durante la inspección. Es pertinente señalar, que, **a base del contrato, la responsabilidad de obtener las certificaciones eléctricas, los permisos, la instalación e interconexión con la AEE (medición neta), era de la parte coquerellada Sunair Photovoltaic y/o Carlos A. Cáceres Maury**. A base de lo antes expresado, este Departamento debe ordenar a la parte coquerellada Sunair Photovoltaic, LLC. y/o Carlos A. Cáceres Maury culminar con las gestiones antes mencionadas, con la debida cooperación que a esos efectos la parte querellante debía brindarle. La parte querellada tenía, además, que entregar a la parte querellante los dos "pipotes" de gas y la placa faltante.

Una vez se finalizara el proceso de interconexión con la AEE y de medición neta, el Departamento llevaría a cabo una inspección para determinar si el equipo estaba funcionando satisfactoriamente. Si el equipo funcionaba satisfactoriamente, el Departamento procedería al cierre y archivo de la querella. De determinar el Departamento que el equipo no estaba funcionando satisfactoriamente, se decretaría la resolución del contrato de compraventa, y la parte querellada debía reembolsar a la parte querellante las cuantías pagadas a la Cooperativa y saldar el balance del financiamiento, que a esos efectos tenía que certificar la Cooperativa.

Debido a que la parte querellada no cumplió con lo previamente ordenado, el DACo decretó la resolución del contrato de

compraventa. Así, dictaminó que, en un término no mayor de 30 días, Sunair Photovoltaic y/o el señor Cáceres Maury, debían reembolsar al matrimonio Martínez Hernández las cuantías pagadas a la Cooperativa y saldar el balance del financiamiento. Añadió que a dicha suma le sería aplicado el interés legal correspondiente, desde que se ordenó el pago hasta que la misma fuera satisfecha.

Inconformes, el 28 de octubre de 2024, Sunair Photovoltaic y el señor Cáceres Maury incoaron una *Moción Solicitando Enmiendas y Determinaciones Adicionales de Hechos y Determinaciones de Derecho, y Reconsideración.* Específicamente, invitaron a la agencia a enmendar las determinaciones de hechos número 12 y 13, por ser contrarias a la prueba testifical y documental presentada y admitida. Además, requirieron al DACo que añadiera 19 determinaciones de hechos.[13] Por último, reiteraron que, a su entender, no procedía la causa de acción en contra del señor Cáceres Maury en su carácter personal.

Transcurrido el término de rigor sin que la agencia recurrida actuara sobre el antedicho petitorio, Sunair Photovoltaic y el señor Cáceres Maury acuden ante nos y señalan que el DACo cometió los siguientes errores:

> Erró el Departamento de Asuntos del Consumidor al apreciar la prueba y al omitir hacer determinaciones de hechos adicionales.

> Erró el Departamento de Asuntos del Consumidor al no acoger enmiendas a las determinaciones de hechos según solicitadas.

El 14 de enero de 2025, el matrimonio Martínez Hernández instó su oposición al recurso de referencia. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A.**

---

[13] Apéndice del recurso, págs. 7-18.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. A.R.P.E.,* 167 DPR 684, 693 (2006); *Otero v. Toyota,* 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida. Véase, *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véanse, además, *Super Asphalt v. AFI y otros,* 206 DPR 803 (2021); *Capó Cruz v. Jta. Planificación,* 204 DPR 581 (2020); *Román Ortiz v. OGPe,* 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[14] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la LPAU, 3 LPRA sec.

---

[14] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota,* supra, a la pág. 728.

9675. Véase también, *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000).

Del mismo modo, las conclusiones de derecho y las interpretaciones que realizan las agencias sobre la ley que le corresponde administrar, a pesar de ser revisables en toda su extensión, deben sostenerse a nivel apelativo si estas son razonables, aunque haya alguna otra interpretación igualmente adecuada. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 283 (2000); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 133 (1998).

Ahora bien, debido a que las resoluciones de los organismos administrativos se presumen correctas, quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotar la presunción que estas poseen. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

**B.**

La Ley Núm. 5 del 23 de abril de 1973, según enmendada, mejor conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341 *et seq.* (Ley Núm. 5 del 23 de abril de 1973), creó al DACo para eliminar el estado de indefensión y desamparo en el cual estaban sumidos los consumidores. Conforme a su Exposición de Motivos, este ente administrativo posee el deber de ventilar y adjudicar las querellas que los consumidores presenten, fiscalizar el cumplimiento de las leyes que tienen como objetivo proteger a esta parte de la población, así como educar y concederle al consumidor representación adecuada en la defensa de sus derechos. (Véase la Exposición de Motivos de la Ley Núm. 5 del 23 de abril de 1973, *supra*). Por lo tanto, el DACo tiene como norte el vindicar e implantar los derechos del consumidor. Art. 3 de la Ley Núm. 5 del 23 de abril de 1973, *supra*, 3 LPRA sec. 341b.

En concordancia con el propósito perseguido por la referida disposición de ley, el DACo tiene la autoridad de atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la economía. Art. 6(c) de la Ley Núm. 5 del 23 de abril de 1973, según enmendado, 3 LPRA sec. 341e(c).

## C.

La *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico*, Ley Núm. 201–2003, según enmendada, 4 LPRA sec. 24 *et. seq.*, instituye la facultad revisora del Tribunal de Apelaciones. En asuntos de índole administrativo, dicha Ley nos circunscribe a examinar órdenes o resoluciones finales. Particularmente, el Artículo 4.006 (c), 4 LPRA sec. 24y de la Ley Núm. 201–2003, dispone que el Tribunal de Apelaciones conocerá de los siguientes asuntos:

[…]

"[m]ediante recurso de revisión judicial, que se acogerá como cuestión de derecho, **de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas** …" (Énfasis nuestro).

[…]

Cónsono con lo anterior, la Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 56, dispone que nuestra jurisdicción revisora se limita a determinaciones administrativas de carácter final. También la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, establece que una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones. Sec. 4.2 de la

LPAU, 3 LPRA sec. 9672. Asimismo, dicha Sección expone, en lo pertinente:

> [...]
>
> **Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente.** La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. (Énfasis nuestro).
>
> La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de este capítulo.

Una orden o resolución final es aquella que culmina el procedimiento administrativo, tiene efectos sustanciales sobre las partes y resuelve todas las controversias ante la agencia; les pone fin, sin dejar pendiente una para ser decidida en el futuro. Es decir, es aquella que dispone del caso ante la agencia y tiene efectos adjudicativos y dispositivos sobre las partes. Esta culmina en forma final el procedimiento administrativo respecto a todas las controversias. *Comisionado Seguros v. Universal*, 167 DPR 21, 29-30 (2006).

**III.**

Tras un análisis ponderado del expediente, con especial atención a la transcripción de la prueba oral, resolvemos desestimar el recurso que nos ocupa por falta de jurisdicción. Lo anterior, toda vez que el pronunciamiento recurrido no atendió la causa de acción en su totalidad. Veamos.

Del expediente del caso se desprenden varias alegaciones de incumplimiento de contrato levantadas por la parte recurrida relacionadas a la permisología para la interconexión con la AEE (medición neta), pipotes de gas y funcionamiento del sistema de generación distribuida fotovoltaico. Por igual, surgen alegaciones de la parte recurrente que pretenden rebatir lo aducido en su contra.

Sin embargo, la determinación en cuestión concluyó que procedía la recisión del contrato porque, según alegó la parte aquí recurrida mediante moción informativa: "...transcurriendo en exceso los términos establecidos en la Resolución, la parte querellada no ha cumplido con lo ordenado, por lo que procede decretar la resolución del contrato de compraventa." Ello, en cuanto a un acuerdo asumido entre las partes para completar los trámites de medición neta. El referido acuerdo se basaba en que Sunair Photovoltaic y/o el señor Cáceres Maury culminaría con las gestiones de la medición neta, con la debida cooperación de la parte recurrida.

Así, resulta evidente que la decisión del DACo no fundamentó las razones para ordenar la resolución del contrato y la devolución de las contraprestaciones. Es decir, no discutió figuras jurídicas posiblemente aplicables, como, por ejemplo, el incumplimiento de contrato o el dolo contractual, que conllevaran la determinación concernida. Tampoco hizo determinación alguna sobre la credibilidad de los testigos que desfilaron durante la vista. Por tanto, concluimos que la resolución impugnada resulta ser de naturaleza interlocutoria.[15] Recordemos que nuestra función revisora solo procede ante determinaciones administrativas de carácter final.

Ante la falta de fundamentos que sostengan la *Resolución Final*, colegimos que el DACo actuó de manera irrazonable al decretar la resolución del contrato de compraventa, por lo que no procede conferirle deferencia. **La agencia deberá emitir, a la brevedad posible, una decisión detallada y bien fundamentada**

---

[15] Como es sabido, los tribunales deben ser guardianes celosos de su jurisdicción. Este asunto debe ser resuelto con preferencia, pues la falta de jurisdicción no es susceptible de ser subsanada. El foro judicial carece de discreción para asumir jurisdicción donde no la hay. Si un tribunal se percata que no la tiene, debe así declararlo y desestimar el caso. *Ruiz Camilo v. Trafon Group Inc.*, 200 DPR 254, 268 (2018); *Hernández Colón v. Policía de Puerto Rico*, 177 DPR 121, 135 (2009); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007).

**basada en la evidencia documental y testifical que obra en el expediente**.

**IV.**

Por los fundamentos antes expuestos, se desestima el recurso de referencia por falta de jurisdicción. Regla 83 (C) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 83(C). Se devuelve el caso al DACo para que actúe conforme lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones